Marjorie M. Borman, Appellee, v. Thomas L. Borman, Appellant.

Gen. No. 39,371.

Heard in the second division of this court for the first district at the June term, 1936. Opinion filed June 29, 1937. Rehearing denied July 9, 1937.

Lowitz & Lowitz, of Chicago, for appellant; Leo H. Lowitz and Raymond Lowitz, of counsel.

Topliff & Horween, of Chicago, for appellee; Samuel Topliff, Ralph Horween and J. A. Farrell, of Chicago, of counsel.

Mr. Presiding Justice Friend delivered the opinion of the court.

August 23, 1930, Marjorie M. Borman, then a resident of Multnomah county, Oregon, filed suit in that county against Thomas L. Borman, her husband, for dissolution of their marriage on the ground of desertion, praying for the custody of their minor child, a money judgment for support, and *for other relief*. Borman was served personally in the State of Oregon, but failed to appear and was defaulted. A decree was entered reciting that the court had jurisdiction of the subject matter and parties, finding that plaintiff was entitled to live separate and apart from her husband and to an award of $125 a month for her maintenance and support and the support of the child, and an order was entered accordingly.

Thereafter plaintiff filed a petition in the circuit court of Cook county based upon the proceeding in Oregon. Defendant was served personally with summons in Illinois. Before proceeding to a final adjudication in the circuit court of Cook county, however, plaintiff, April 25, 1935, petitioned the judges of the circuit court of Multnomah county to find the amount of money then due plaintiff from defendant, and the court there found that there was due plaintiff $2,355, and entered judgment on the petition. That judgment was never satisfied in Oregon. Afterward plaintiff supplemented the petition filed in the circuit court of Cook county by setting up the proceedings in Oregon and praying judgment for $2,355, interest and costs.

Defendant filed an answer admitting some of the allegations of the petition, denied others and challenged the jurisdiction of the Oregon court in the divorce proceeding to enter a decree of separate maintenance which also included a provision for support money for plaintiff and the child. The amended answer was stricken on motion of plaintiff and final judgment was entered in her favor January 24, 1936, for $2,355 and costs, which was the amount adjudged by the Oregon court to be due plaintiff. Defendant elected to stand by the answer, and upon entry of the judgment prosecuted an appeal to the Supreme Court of Illinois on the ground that a constitutional question was involved. The Supreme Court, in an opinion filed December 10, 1936 (*Borman v. Borman*, 364 Ill. 601), transferred the cause to this court for determination.

It is urged among the various grounds for reversal that the Oregon decree and judgment was *void* because separate maintenance was granted in a divorce proceeding; that the decree of separate maintenance was not responsive to the pleadings and determined matters outside the issues; and that the decree, being void for lack of jurisdiction, is subject to collateral attack in the courts of this State. In order to maintain this position defendant's counsel are driven to the necessity of arguing that the Oregon decree was void because no jurisdiction was conferred on the court in Oregon to enter a separate maintenance decree in the divorce action. It must be conceded, however, that the Oregon court in which the petition was filed is a court of general jurisdiction, empowered to hear actions for separate maintenance as well as divorce, and that the petition contained allegations which would have justified the Oregon court in entering a separate maintenance decree if that relief had been specifically sought. Furthermore, the petition also contained a prayer for relief other than the dissolution of the marriage contract. These

circumstances are emphasized in the opinion of the Supreme Court in *Borman v. Borman, supra,* in the following language (p. 603):

"The prayer of the petition filed in the Oregon court was for a dissolution of the marriage contract, but there was also a prayer for other relief. Some of the allegations of the petition were appropriate if contained in a petition for separate maintenance, though it also prayed for a dissolution of the marriage. It does not appear by the record or from the statutes of the State of Oregon which are cited, that the only remedy available to the plaintiff was one of divorce under the petition filed in that State. It appears that the court in which the petition was filed is a court of general jurisdiction and has jurisdiction to hear actions for divorce and separate maintenance. Jurisdiction of a court to hear and determine a cause does not depend upon actual facts alleged but upon authority to determine the existence or non-existence of such facts and render judgment according to such finding. (*People v. Sullivan,* 363 Ill. 34.) Even though the Oregon court exercised a special statutory power, it had jurisdiction, under proper pleadings, to award divorce or separate maintenance and it had jurisdiction of the parties. The record sufficiently shows these facts. Support money was awarded but it was not designated as alimony, and there was no final adjudication of divorce."

The Supreme Court did not pass upon the question whether relief of the nature granted could have been awarded under the laws of Oregon under the pleadings in that case, and transferred the appeal because it required a construction of the laws of Oregon and involved no constitutional question. In conclusion the court said (p. 604) that "it is only where the facts recited in the record of a judgment in another State show either a lack of jurisdiction of the subject matter or of the parties that a direct appeal from the circuit (or superior) court may be taken to this court."

The immediate question thus presented for determination is whether relief of the nature granted could have been awarded under the laws of Oregon upon the pleadings in that case. The complaint in Oregon alleged that plaintiff was then and had continuously for more than one year immediately preceding the commencement of that suit been a resident and inhabitant of Multnomah county, Oregon; that the parties were married February 27, 1912, at Portland, Oregon, and had since that date occupied the status of husband and wife; that as the result of the marriage one child, Edith M. Borman, had been born and resided with its mother, the plaintiff; that about December 28, 1927, defendant, disregarding the solemnity of his marriage vows, voluntarily, wilfully and without cause or justification, either in the consent, acquiescence or wrongful conduct of plaintiff, and against her advice and judgment, and without any intention on the part of defendant to return, deserted and abandoned plaintiff, whereby the marriage contract and its purposes had been destroyed, and that this intentional abandonment had been continuous and uninterrupted since 1927 up to and including the date of filing of the complaint, by reason whereof the health and peace of mind of plaintiff had been destroyed; that there were no property rights to be settled between the parties; that defendant was a civil engineer by profession, and when employed earned upward of $325 a month; that he is an able-bodied man, and that plaintiff, who is not at fault in any particular, is a fit and proper person to have the custody and rearing of the child of said marriage. The petition prayed that the contract of marriage then existing between the parties be dissolved and held for naught, that plaintiff be awarded the custody of Edith M. Borman, the minor child, reserving to defendant the right to visit his daughter at such reasonable times as might be agreed upon by the parties or designated by the court, that plaintiff receive of and from defendant,

and defendant be required to pay for the use and benefit of plaintiff and the child $175 a month until the further order of court, and *that plaintiff may have such other and further relief as to the court may seem equitable.*

Undoubtedly, most of these allegations were appropriate to a petition for separate maintenance and the general prayer for relief empowered the court, in the absence of a specific statute to the contrary, to enter a separate maintenance decree even though a dissolution of the marriage was specifically prayed. Defendant's counsel cite no authority holding that a decree based upon a petition, containing allegations of this nature and a general prayer for relief, rendered by a court having jurisdiction to enter both divorce and separate maintenance decrees, can be regarded as a *void* decree. In order to maintain his position that this decree can be attacked collaterally in Illinois, it would be incumbent upon defendant to show that the Oregon decree was void. We find no authority for such a conclusion under the circumstances of this case.

Sec. 34 of the Civil Practice Act of Illinois (ch. 110, Illinois State Bar Stats. 1935, ¶ 162; Jones Ill. Stats. Ann. 104.034) provides that every complaint and counterclaim shall contain specific prayers for the relief to which the pleader deems himself entitled, and that such relief, whether based on one or more counts, may be asked in the alternative, and, *"except in case of default,* the prayer for relief shall not be deemed to limit the relief obtainable but where other relief is sought the court shall, by proper orders and upon such terms as may be just, protect the adverse party against prejudice by reason of surprise." Counsel for defendant have not pointed out any provision in the Oregon statutes similar to the one hereinbefore italicized, which would limit the relief obtainable "in case of default"

to the specific prayer contained in the petition, as does the Illinois act, and we find no such provision. We may, therefore, assume that under the statutes of that State the Oregon court could have entered either a divorce or separate maintenance decree under proper allegations of the complaint and upon a sufficient showing made by plaintiff in that proceeding.

Under the law of Illinois there is a strong presumption that the judgment of a foreign State is valid. It was so held in *Nelson v. Sutton,* 232 Ill. App. 93, and cases cited therein. In the *Nelson* case the court said (p. 100):

"Where a judgment has been rendered by a court of general jurisdiction, there is a strong legal presumption that the court had jurisdiction to render the judgment and that its proceedings conform to the law of the State in which it was rendered."

The court also held in *Nelson v. Sutton, supra* (p. 100):

"A judgment of a sister State cannot be impeached by establishing irregularities in the form of the proceedings, or upon the ground that the decision is erroneous. . . . If this judgment was valid and binding under the laws of South Dakota, then it was binding on the courts of Illinois, and it is immaterial what may be the holding of courts of other States upon the question involved in the case. If the judgment was valid in South Dakota, then it would be sufficient to form the basis of the suit in Illinois and the trial court was in error in holding to the contrary."

It has been held in Oregon that a court of equity may grant affirmative relief even though such relief was not specifically prayed. (*Gilmore v. Burch,* 7 Ore. 374.) In *Crabill v. Crabill,* 22 Ore. 588, the Supreme Court of Oregon held a divorce decree binding on the parties even though the complaint did not state a cause of ac-

tion. In discussing the question, the court said (p. 589):

"The court, therefore, had jurisdiction of the parties and of the subject matter of the suit; and the decree which it rendered was within the jurisdiction conferred on it by law. Such being the case, the rule of law is well settled that when a judgment or decree is rendered by a court thus invested with jurisdiction of the parties and subject matter, although the judgment or decree rendered therein may be erroneous, it is obligatory until reversed. Such a decree cannot be treated as a nullity merely because it was improvidently made, or in a manner not warranted by law."

In several recent Illinois decisions it was held that the judgment or decree of a court having jurisdiction of the general subject matter of the cause and of the parties cannot be collaterally attacked, although erroneous. (*Woodward v. Ruel,* 355 Ill. 163; *First Nat. Bank of Palatine v. Hahnemann Institutions of Chicago, Inc.,* 356 Ill. 366; *People v. Sterling,* 357 Ill. 354.) In *Woodward v. Ruel, supra,* the court said (p. 172):

"The judgment of a court which has jurisdiction of the subject matter and of the parties and possesses the power to render the particular judgment, even though erroneous, is immune from collateral attack." It thus appears that both under the laws of Illinois and Oregon, where a court has jurisdiction of the parties and subject matter, a judgment regularly entered, even though it may be erroneous, is nevertheless valid until reversed on appeal or writ of error, and cannot be considered as a void judgment subject to collateral attack in another State.

Although other points are urged by defendant as ground for reversal, his entire defense is founded on the contention that the Oregon decree was void and subject to collateral attack. Holding as we do that this position is untenable under the record of this case, we

consider it unnecessary to discuss the other points. Therefore the judgment of the circuit court is affirmed.

*Judgment affirmed.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.